South Hudson Trucking Company v. Commissioner.
South Hudson Trucking Co. v. Commissioner
Docket No. 19724.
United States Tax Court
1949 Tax Ct. Memo LEXIS 70; 8 T.C.M. (CCH) 886; T.C.M. (RIA) 49240; September 23, 1949
*70 Stephen P. Piga, Esq., 15 Exchange Pl., Jersey City, N.J., for the petitioner. W. Morgan Hunter, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: The correctness of deficiencies in declared value excess-profits tax and excess-profits tax of $264 and $1,576.63, respectively, for petitioner's taxable year ended February 29, 1944, is placed in issue by this proceeding. The question is the deductibility of a payment of $2,000 to the trustee in bankruptcy of one of petitioner's beneficial stockholders. Other adjustments are not contested. Findings of Fact Petitioner, a corporation organized and existing under the laws of the State of New Jersey, and having its principal place of business at 736 Avenue E, Bayonne, New Jersey, filed corporation income, declared value excess-profits and excess-profits tax returns for the taxable year ended February 29, 1944, with the collector of internal revenue for the third district of New Jersey In the returns income and deductions were reported according to an accrual method of accounting. Joseph F. Jasovsky, hereinafter called decedent, died in August 1941, leaving a will in which he bequeathed *71 to a lawyer named Stephen Piga, as trustee, 965 shares of stock of petitioner to hold in trust until decedent's youngest child, then age 9, should attain majority, to divide the income from such shares evenly among decedent's brother and five of decedent's children, and on termination of the trust to transfer the shares as follows: 225
shares to son Edward
140
shares to brother Emil
150
shares each to four other children,
including Francis Thomas In the event of the death of a beneficiary prior to termination of the trust, his designated share was to go to his issue per stirpes, or, failing such issue, to the other named beneficiaries equally. At and since the date of decedent's death, petitioner's outstanding capital stock has consisted of 1,000 shares, of which 965 have been held by Stephen Piga, as described above, 25 by Edward Jasovsky, and 10 by Emil Jasovsky. Edward and Emil Jasovsky were designated president and secretary of the corporation and have constituted the board of directors ever since decedent's death. On August 7, 1941, a judgment for injuries arising from an automobile accident was obtained against Francis Thomas Jasovsky, hereinafter *72 called Francis. This judgment has never been satisfied. Francis subsequently filed a petition in bankruptcy and was adjudicated bankrupt. Joseph Moritz was appointed trustee in bankruptcy. Francis was represented in both the tort and the bankruptcy proceedings by Stephen Piga. On October 5, 1943, Moritz filed objections to the discharge in bankruptcy, asserting an interest in the capital stock of petitioner under decedent's will, and demanded of petitioner's officers information concerning its affairs so that the value of such interest might be determined. On advice of Stephen Piga, petitioner resisted those demands. On April 5, 1944, Moritz subpoenaed the books and records of petitioner, which was represented in the proceeding by Stephen Piga. On July 12, 1944, the Bankruptcy Court entered an order authorizing Moritz to accept an offer by petitioner to acquire the interest of Moritz in the capital stock of petitioner. Petitioner was represented by Stephen Piga in negotiations culminating in the offer. On July 24, 1944, petitioner paid Moritz the sum of $2,000, and Moritz executed an assignment to petitioner of all his right, title, and interest in property bequeathed to or *73 for the benefit of Francis in decedent's will. The assignment was drawn by Stephen Piga. Moritz subsequently withdrew his objections and thereafter the Bankruptcy Court entered an order of discharge in bankruptcy. Respondent determined the deficiencies in controversy by disallowing the $2,000 as a deduction for the fiscal year ended February 29, 1944. Opinion Respondent's first ground for justifying the disallowance of the claimed deduction is that petitioner, which is on an accrual basis of accounting, was not entitled to accrue any such obligation in the fiscal year before us. Since we are satisfied of the correctness of respondent's position in this respect, we need pass upon none of his other contentions. The payment in question having been made after the close of the instant year, only a prior obligation to make it would justify accrual. Such an obligation could have arisen in but one of two ways: Either as a legal - or possibly a moral - obligation resulting from the original accident; , acq. ; , acq. 1946- 2C.B., 5; or by virtue *74 of an agreement to make the settlement with the bankruptcy trustee. An accrual based upon the original accident would have been attributable to a year not later than petitioner's fiscal 1942, since the judgment which determined the amount of the liability was entered in August 1941. . And any agreement to make the settlement with the trustee, according to the record, could not have been earlier than April, 1944, since it was his effort to examine petitioner's books that is said to have forced petitioner's action. That date would put the accrual in petitioner's fiscal 1945. Neither would justify treating any event of fiscal 1944, our year, as creating the liability for which accrual and deduction are sought. Under these circumstances we regard what we held in , affirmed (C.C.A., 2nd Cir.), , in the following language as dispositive: "The petitioner insists that it was at no time either legally or morally liable to make good the shortage caused by the misappropriation of the funds of the Carter Hotel. It is clear that if it was so liable, that *75 liability arose in 1933 and 1934, when the funds were embezzled. But petitioner asks that it be permitted to accrue in 1937 an amount it was under no liability to pay because near the close of the year it had determined that it was good policy to make some settlement with the Metropolitan Life in order to retain the good will of that company. Accrual of liabilities in order to be used as a basis for income tax deductions must have a more substantial basis. On petitioner's own statement of its case, no definite liability might arise until 1938, when the parties agreed upon the terms of settlement and, in the circumstances here present, no liability could arise, if at all, before that year. ; Trippensee ; ; ." We think the deficiencies were correctly determined. Decision will be entered for the respondent.